IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Nos. 08-135 & 09-188 |
| | ) |
| TAVIUS SMITH | ) |

OPINION

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 (Document No. 68 at Criminal No. 08-135; Document No. 14 at Criminal No. 09-188) filed by Tavius Smith ("petitioner"). Because petitioner knowingly and voluntarily agreed to a valid and enforceable waiver of his right to file a §2255 motion attacking his conviction or sentence, his motion will be denied.[1]

On March 19, 2008, a grand jury returned a one-count indictment at Criminal No. 08-135 charging petitioner with possession of a firearm by a convicted felon. On June 8, 2009, petitioner changed his plea to guilty at Criminal No. 08-135 pursuant to a written plea agreement. On that same date, pursuant to the same plea agreement, petitioner pled guilty to both counts of a two-count information at Criminal No. 09-188 charging him at Count One with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and at Count Two with money laundering.

---

[1] Pursuant to Rule 8(a) of the Rules Governing §2255 Proceedings, the court finds that no evidentiary hearing on petitioner's motion is required. Where the record conclusively shows that a movant is not entitled to relief, the court may dismiss the motion based on the record without a hearing. See United States v. Nahodil, 36 F.3d. 323, 326 (3d Cir. 1994). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a §2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). In this case, for the reasons set forth in this opinion, the record affirmatively establishes as a matter of law that petitioner's waiver of his right to seek relief under §2255 is valid and enforceable.

Under the terms of the written plea agreement, petitioner waived his right to take a direct appeal from his conviction or sentence, subject to several enumerated exceptions, and further waived his right to file a §2255 motion or any other collateral proceeding attacking his conviction or sentence. Plea Agreement, ¶A15.

After receipt of the presentence report this court issued a memorandum order and tentative findings and rulings which, *inter alia*, found petitioner to be a career offender pursuant to U.S.S.G. §4B1.1(a). This finding increased petitioner's total offense level from 31 to 34, which, along with a criminal history category of VI,[2] resulted in an advisory guideline range of 262 to 327 months. Petitioner was sentenced to a term of imprisonment of 262 months, the low end of that advisory guidelines sentencing range. Petitioner did not file a direct appeal from his judgment of conviction and sentence.

Notwithstanding the condition of his plea agreement waiving the right, petitioner filed the pending motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255,[3] in which he asserts three grounds for relief: (1) his counsel was ineffective in failing to "investigate" and challenge at sentencing petitioner's three previous state court convictions which constituted predicate offenses triggering application of the career offender guidelines; (2) his previous conviction for malicious assault no longer qualifies as a crime of violence, and he therefore no

---

[2] Because he had 17 criminal history points, petitioner's criminal history category would have been VI even had he not qualified as a career offender.

[3] 28 U.S.C. §2255 grants a federal prisoner an opportunity to move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). Relief under §2255 is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F.Supp. 337, 339 (E.D.Pa. 1997) (*citing* Hill v. United States, 368 U.S. 424, 428 (1962)).

longer is a career offender, in light of the decision of the United States Supreme Court in <u>Johnson v. United States</u>, 559 U.S. 133 (2010); and, (3) his sentence of 262 months' imprisonment amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

Upon due consideration of petitioner's motion and brief,[4] the government's response, and the record as a whole, the court finds that petitioner knowingly and voluntarily waived his right to seek relief under §2255 and that his waiver of that right is valid and enforceable.

Petitioner and the United States Attorney for the Western District of Pennsylvania entered into a negotiated plea agreement which contained a broad provision waiving petitioner's collateral attack rights. This waiver provision explicitly provides:

> "[Petitioner] further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."

Plea Agreement, ¶A15.

The Court of Appeals for the Third Circuit has recognized that a defendant's waiver of his right to file a §2255 motion or other collateral proceeding attacking his conviction and sentence is enforceable "provided that [it is] entered into knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." <u>United States v. Mabry</u>, 536 F.3d 231, 237 (3d Cir. 2008). Applying this standard, the court is satisfied that petitioner's waiver of his collateral attack rights in this case is valid and enforceable.

---

[4] At the time he filed the pending §2255 motion, petitioner also filed a motion for leave to file a memorandum of law in support thereof. (Document No. 15 at Criminal No. 09-188). After receipt of this court's notice pursuant to <u>United States v. Miller</u>, 197 F.3d 644, 649 (3d Cir. 1999), petitioner "amended" his motion by filing a brief in support. Accordingly, his motion for leave to file a memorandum of law in support of his §2255 motion will be denied as moot.

First, the record establishes that petitioner's waiver of his collateral attack rights was knowing and voluntary. Because there is no allegation here that petitioner was misled into waiving his collateral attack rights, the court may determine whether the waiver was knowing and voluntary merely by looking to the written plea agreement itself as well as to the change of plea colloquy. Mabry, 536 F.3d at 238.

Looking initially to the written plea agreement itself, petitioner's collateral attack waiver is set forth explicitly in that agreement, is extremely broad and, unlike the direct appeal waiver contained in that same agreement, which preserved petitioner's right to take a direct appeal under certain enumerated circumstances, contains no exceptions. Plea Agreement, ¶A15.

Moreover, a review of the plea colloquy establishes that petitioner plainly understood the waiver. Whether a defendant knowingly and voluntarily enters into a plea agreement containing a waiver turns on whether "the district court inform[ed] the defendant of, and determine[d] that the defendant underst[ood] the terms of any plea agreement provisions waiving the right ... to collaterally attack the sentence as Federal Rule Criminal Procedure 11(b)(1)(N) requires." Mabry, 536 F.3d at 239. Here, the record demonstrates that the court adhered to Fed.R.Crim.P. 11(b)(1)(N) and that petitioner adequately was informed that he was waiving his collateral attack rights and that he understood that he was doing so.

At the plea hearing, petitioner, under oath, acknowledged his signature on the plea letter, confirmed that he had read it and had discussed it with his attorney and affirmed that he had signed it voluntarily. Plea Transcript at 24-25. The government then summarized the plea agreement and reviewed all its terms, including the collateral attack waiver provision, noting that petitioner "waives his right to file a motion to vacate sentence under Title 28 United States Code Section 2255, attacking his conviction or sentence and the right to file any other collateral proceeding

attacking his conviction or sentence." Id. at 28.

Then, as required by Fed.R.Crim.P. 11(b)(1)(N),[5] the court specifically emphasized petitioner's waiver of his collateral attack rights, informing petitioner again that he was "waiv[ing] your right to file a post-conviction motion under certain provisions of the United States Code where you could contend that certain constitutional rights have been violated, including the right to effective assistance of counsel, and things of that sort. You are waiving all of those rights." Plea Transcript at 29. When the court inquired whether petitioner understood that he was waiving those rights, petitioner responded, "[y]es, Your Honor." Id.

Thus, the record in this case establishes conclusively that petitioner was informed that by pleading guilty he was giving up his right to file a §2255 motion and that he clearly understood that he was waiving that right. Accordingly, the court is satisfied that petitioner's waiver of his right to file such a motion was made knowingly and voluntarily.

Having determined that petitioner's waiver was knowing and voluntary, the court next must consider whether enforcement of that waiver, even if knowing and voluntary, would work a miscarriage of justice. Mabry, 536 F.3d at 237. While "a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice based on the record evidence before it," Id. at 237-38, the miscarriage of justice exception is to be applied "sparingly and without undue generosity." United States v. Delbridge, 504 Fed.Appx. 145, 150 (3d Cir. 2012); United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005).

---

[5] Federal Rule of Criminal Procedure 11(b)(1)(N) requires the court, not the government or defense counsel, to address the defendant in a plea hearing and inform him that he is waiving his right to appeal and to collaterally attack his sentence.

⊕AO 72
(Rev. 8/82)

"'In considering whether enforcing a waiver would result in a miscarriage of justice, we take into account "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."' Mabry, 536 F.3d at 242–43 (quoting United States v. Teeter, 257 F.3d 14, 25–26 (1st Cir.2001)). This court is to use a common sense approach and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Mabry, 536 F.3d at 243.

Utilizing this common sense approach, this court is satisfied that the enforcement of petitioner's knowing and voluntary waiver in this case would not work a miscarriage of justice. First, enforcement of the collateral attack waiver here would not bar petitioner from pursuing relief on any grounds expressly preserved in the plea agreement, as the collateral attack waiver agreed to by petitioner was broad and contained no exceptions. Plea Agreement, ¶A15; see, United States v. Shedrick, 493 F.3d 292, 303 (3d Cir. 2007). Nor does petitioner argue that his counsel was ineffective or coercive in negotiating the plea agreement that contained the collateral attack waiver provision. See, e.g., Wilson, 429 F.3d at 458 (stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice).

Finally, petitioner has not identified "any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack." Mabry, 536 F.2d at 243. Rather, it is clear that all three of the claims that petitioner seeks to raise in his §2255 motion are encompassed by the broad waiver of his collateral attack rights and otherwise are not substantial. See Mabry, 536 F.3d at 243.

Here, none of the grounds set forth in petitioner's §2255 motion challenge his conviction and he does not assert that he is innocent of the crimes to which he knowingly and voluntarily pled

guilty. Instead, all three of his asserted grounds for relief raise issues relating solely to his sentence. Moreover, even a cursory review of petitioner's asserted claims demonstrates that he cannot establish any clear or grave error in regard to his sentencing that will result in manifest injustice if his collateral attack waiver is enforced.

Petitioner's first ground for relief alleges that his retained counsel, Mark Lancaster, was ineffective[6] in failing to "investigate" the three prior state court convictions that qualified petitioner as a career offender and in failing to challenge those convictions at sentencing on the ground that his state court attorneys were "incompetent" in failing to advise him that such convictions subsequently could be used to enhance a federal sentence under the career offender guidelines.

However, it long has been established that, with the sole exception of convictions obtained when a defendant is unrepresented, a defendant in a federal sentencing proceeding has no constitutional right to collaterally attack the validity of previous state convictions used to enhance a sentence. United States v. Custis, 511 U.S. 485, 497 (1994). Here, petitioner does not allege that he was not represented by counsel when convicted of his previous state offenses, but instead argues that the attorneys who were representing him were ineffective in failing to advise him of any potential future consequences of his guilty pleas to those offenses. Accordingly, petitioner had no right to collaterally attack those previous state convictions at his sentencing hearing,[7] and,

---

[6] In order to establish constitutionally ineffective assistance of counsel, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In the context of a guilty plea, the prejudice prong of the Strickland test can be met by a showing that, but for counsel's errors, petitioner would have proceeded to trial instead of pleading guilty. Hill v. Lockhart, 474 U.S. 52, 56-59 (1985); United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

[7] Nor can petitioner challenge the constitutionality of his previous state convictions in a §2255 motion. United States v. Daniels, 532 U.S. 374 (2001)(with sole exception of convictions obtained in violation of right to counsel, a §2255 motion is not the appropriate vehicle for determining whether a conviction used to enhance a federal sentence was constitutionally obtained).

therefore, Attorney Lancaster was not deficient in failing to "investigate" or to seek to have those convictions "set aside."

Petitioner's second asserted claim for relief under §2255 likewise fails to raise a substantial issue sufficient to set aside petitioner's collateral attack waiver. Petitioner argues that his prior conviction for malicious assault in the Brooke County, West Virginia, Circuit Court on May 21, 1999 (PSIR ¶41), no longer qualifies as a "crime of violence" under U.S.S.G. §4B1.1(a) in light of the decision of the United States Supreme Court in Johnson v. United States, 559 U.S. 133 (2010), and that he therefore should be re-sentenced without application of the career offender guidelines.[8]

However, even assuming that Johnson can be applied retroactively to petitioner's case, it does not support petitioner's position. In Johnson, the Supreme Court held that the defendant's prior battery conviction under Florida law was not a violent felony within the meaning of the Armed Career Criminal Act (ACCA) because it did not have as an element the use of physical force against another person. The court reasoned that the term "physical force" under the ACCA, 18 U.S.C. §924(c)(3)(A), means "violent force," *i.e.*, force capable of causing physical pain or injury to another person. Because the Florida felony offense of "battery by actually and intentionally touching another person" could be committed by *any* intentional physical contact, no matter how slight, it was not a "violent felony" under the ACCA.

Conversely, the West Virginia offense of malicious assault of which petitioner was convicted clearly has as an element the use of "physical force," *i.e.*, violent force capable of causing physical pain or injury to another person. Under the categorical approach to determining whether

---

[8] Had petitioner not been found to be a career offender, his advisory guideline range, with a total offense level of 31 and a criminal history category of VI, would have been 188 to 235 months, rather than 262 to 327 months.

AO 72
(Rev. 8/82)

an offense qualifies as a crime of violence, if the statutory text is clear the court "must look only to the statutory definition" of the offense and may not consider other evidence concerning the facts underlying the conviction. Taylor v. United States, 495 U.S. 575 (1990). The statutory text of the West Virginia malicious assault statute clearly establishes that it is a crime of violence as defined in U.S.S.G. §4B1.2(a)(1) under the Johnson analysis.[9]

Pursuant to the West Virginia statute, a person commits malicious assault if the person "maliciously shoot[s], stab[s], cut[s] or wound[s] any person, or by any means cause[s] him bodily injury with intent to maim, disfigure, disable or kill." W.Va.Code §61-2-9(a)(1978)(Rep.Vol. 1997). Very much unlike the Florida battery statute at issue in Johnson, which could be committed by any intentional physical contact, no matter how slight, the offense of malicious assault as defined in the West Virginia statute plainly cannot be committed without "violent force," i.e., force capable of causing physical pain or injury to another person. Accordingly, the Johnson decision actually reinforces the determination that petitioner's previous malicious assault conviction is a crime of violence under the career offender guidelines.[10]

---

[9] U.S.S.G. §4B1.2(a)(1) defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that - (1) has as an element the use, attempted use, or threatened use of physical force against the person of another." Although Johnson addressed the meaning of the term "physical force" as used in the definition of a "violent felony" under the ACCA, the Third Circuit Court of Appeals has held that "the definition of 'violent felony' in the ACCA and the definition of a 'crime of violence' in the Sentencing Guidelines are 'close enough that precedent under the former must be considered in dealing with the latter.'" United States v. Lee, 612 F.3d 170, 196 n. 33 (3d Cir. 201)(*quoting* United States v. Polk, 577 F.3d 515, 519 n. 1 (3d Cir.2009).

[10] The court would also note that petitioner had two other previous convictions for a crime of violence in addition to the malicious assault conviction: (1) robbery of a motor vehicle and simple assault in Westmoreland County Court of Common Pleas on April 30, 2001 (PSIR ¶ 43); (2) recklessly endangering another person and simple assault in Washington County Court of Common Pleas on August 31, 2001 (PSIR ¶ 44). Petitioner did not object at sentencing to the use of either of these previous convictions as predicate offenses at sentencing nor does he challenge them in his pending §2255 motion. U.S.S.G. §4B1.1(a) requires only two previous convictions for a crime of violence. Thus, even if petitioner had been able to assert a substantial claim relating to his malicious assault conviction, he still would be a career offender based upon his other two previous convictions.

Petitioner's final asserted ground for habeas relief also is insubstantial as petitioner has no viable claim that his sentence is so grossly disproportionate to the severity of his crimes as to violate the Eighth Amendment to the United States Constitution.

The Supreme Court long has recognized that the Eighth Amendment's prohibition against cruel and unusual punishment "contains a 'narrow proportionality principle' that 'applies to noncapital cases.'" Ewing v. California, 538 U.S. 11, 20 (2003)(quoting Harmelin v. Michigan, 501 U.S. 957, 996-97). However, "the Eighth Amendment does not demand strict proportionality between the crime and the sentence; rather, it forbids only those sentences that are 'grossly disproportionate' to the crime." United States v. McEwan, 445 F.3d 237, 248 (3d Cir. 2006). Accordingly, "only an extraordinary case will result in a constitutional violation," United States v. Walker, 473 F.3d 71, 79 (3d Cir. 2007), and "it is exceedingly rare for a court to find a sentence to be cruel and unusual." United States v. Reaves, 440 Fed. Appx. 140, 143 (3d Cir. 2011).

Here, petitioner's sentence clearly is not grossly disproportionate to the severity of his crimes. Petitioner pled guilty in this case to a serious drug offense, possession of firearms and money laundering. The government had evidence showing that petitioner was a large-scale drug trafficker who acknowledged that he had been purchasing ½-kilogram quantities of cocaine every 7 to 14 days over the course of a one-year period at a price of $13,000 per kilogram. A search warrant executed at his mother's residence resulted in the seizure of a semi-automatic pistol, a revolver and a shotgun, all belonging to petitioner, who was prohibited from lawfully possessing any firearm. A search warrant executed at petitioner's own residence turned up drug paraphernalia as well as $250,000 in cash. The evidence also showed that petitioner, with minimal legitimate income, relied on his drug trafficking proceeds to support an extravagant lifestyle that included several residences, high-end motor vehicles, ATV's, expensive airline travel and gambling.

The severity of the crimes to which petitioner pled guilty, coupled with his extensive criminal history, resulted in a guideline sentencing range of 262 to 327 months. Under the circumstances, a sentence of 262 months, the low end of the advisory guideline range, for a large-scale drug trafficker who unlawfully possessed multiple firearms and had a violent criminal past, clearly cannot be said to be grossly disproportionate to the severity of petitioner's crimes and does not offend the constitutional proscription of cruel and unusual punishment. See United States v. Horne, 41 Fed. Appx. 587, 588 (3d Cir. 2002)(sentence lying at bottom of guideline range not grossly disproportionate to severity of crime). Because petitioner has no viable Eighth Amendment claim, his third asserted ground for §2255 relief is insubstantial.

As petitioner has failed to identify any nonfrivolous ground, not covered by the waiver, for a collateral attack," Mabry, 536 F.2d at 243, the court is satisfied that enforcement of petitioner's collateral attack waiver would not give rise to a miscarriage of justice in this case. Thus, because petitioner knowingly and voluntarily agreed to waive his right to file a motion to vacate under §2255 or any other collateral proceeding attacking his conviction or sentence, and the enforcement of that waiver would not work a miscarriage of justice, the waiver of petitioner's collateral attack rights will be enforced and his §2255 motion therefore will be denied.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered, a determination of whether a certificate of appealability should issue also shall be made. The issuance of a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause).

Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

AO 72
(Rev. 8/82)

§2253(c)(2). Where, as here, the court denies relief on procedural grounds, a petitioner is entitled to a certificate of appealability only if he can demonstrate both that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the court is correct in its procedural ruling. See, e.g., Slack v. McDaniel, 529 U.S. 473, 484 (2000); Bivings v. Wakefield, 316 Fed. Appx. 177, 179 (3d Cir. 2009).

Here, the court is satisfied that no reasonable jurist would argue that petitioner's waiver of his collateral attack rights would not be enforceable, for the reasons outlined above. Slack, 529 U.S. at 484. Nor is it reasonably debatable that petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the court believes that a certificate of appealability should not issue in this case. See Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

An appropriate order will follow.

Date: June 5, 2013

Gustave Diamond
United States District Judge

cc: Charles A. Eberle
Kelly R. Labby
Assistant U.S. Attorneys

Tavius Smith